UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Abdiyyah Ben Alkebulanyahh )<br>(*fka* Tyree Alphonso Roberts), )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>William R. Byars, Jr., *Commissioner, South* )<br>*Carolina Department of Corrections*; Wayne )<br>C. McCabe, *Warden of Lieber Correctional* )<br>*Institution*, )<br>)<br>Respondents. )<br>)<br>_____ ) | C/A No. 6:13-cv-00918-TLW-KFM<br><br>**SUPPLEMENTAL REPORT**<br>**AND RECOMMENDATION** |

This is a capital habeas corpus action brought pursuant to 28 U.S.C. § 2254. Petitioner filed his petition for writ of habeas corpus on February 13, 2014 (ECF No. 31), and Respondents moved for summary judgment on April 17, 2014 (ECF No. 45). On November 5, 2014, in accordance with 28 U.S.C. § 636(b)(1)(A)(B) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.), the undersigned issued a Report and Recommendation ("Report") on Respondents' motion. (ECF No. 75).

That Report recommends the court dismiss the petition as procedurally barred. However, the Report also reviews the merits of Petitioner's claims and recommends that, should the court not find the petition procedurally defaulted, it should grant Respondents' motion for summary judgment as to all of Petitioner's habeas grounds, except for one portion of Ground Ten.

The relevant portion of Ground Ten alleges that Petitioner was deprived of his Sixth and Fourteenth Amendment rights to a fair trial because one juror consulted with her minister during the trial. To support this claim, Petitioner provided the court with an affidavit from a law student

1

who, along with three other students, interviewed several jurors from Petitioner's case as part of a law school clinic. (ECF No. 44-40 at 89-90). The affidavit did not identify the juror, but provided that "one juror stated that in addition to praying, she asked a minister for guidance on how to make a decision during the sentencing phase." (*Id.*).

The Report found that, in light of the affidavit, Petitioner's claim may warrant additional evidentiary development under *Remmer v. U.S.*, 347 U.S. 227 (1954). *Barnes v. Joyner*, 751 F.3d 229 (4th Cir. 2014), and *Hurst v. Joyner*, 757 F.3d 389 (4th Cir. 2014). Respondents specifically objected to this portion of the Report, asserting that the affidavit did not provide enough information to warrant an evidentiary hearing. (ECF No. 79). On December 8, 2014, the court allowed Petitioner twenty days to submit an affidavit from the relevant juror further detailing her contact with her minister during Petitioner's trial. (ECF No. 81).

In response, on December 19, 2014, Petitioner filed an affidavit from Cynthia Milanesi, stating that she was a juror in Petitioner's trial and that, "[b]etween being selected as a juror and returning to the court for the beginning of the trial and sequestration," she met with an Episcopalian priest, Father Law, "about making the decision on the death penalty." (ECF No. 87).[1] Ms. Milanesi states that she contacted Father Law because she "knew it would be difficult for [her] to make the sentencing decision in a death penalty case and wanted to know what [her] faith would say about voting in favor of the death penalty." (*Id.*). According to the affidavit, Father Law told Ms. Milanesi that she "had a duty to follow the law and [her] faith would allow [her] to vote for the death penalty. He said that God would not hold it against [her] if [she] had to vote for the death penalty." (*Id.*).

---

[1] The undersigned notes that this contact occurred despite the trial judge's numerous instructions that the potential jurors were not to talk to anyone about the case. (*See* App. 129, 220, 586, 1329).

2

Based on this affidavit and relevant case law, the court found that Petitioner was entitled to an evidentiary hearing limited to the issue of whether the communication between Ms. Milanesi and Father Law had a substantial and injurious effect or influence in determining the jury's verdict in Petitioner's trial. (ECF No. 89). Accordingly, on January 29, 2015, the undersigned held an evidentiary hearing for the parties and the court to hear Ms. Milanesi's testimony and further explore this issue. The undersigned took the matter under advisement and allowed the parties to submit post-hearing briefs after the filing of the official transcript of the hearing. (ECF No. 101). Both parties have submitted their briefs (ECF Nos. 106, 107), and this matter is now before the court for a Supplemental Report and Recommendation, limited to whether Petitioner is entitled to relief on this one claim.

## Legal Standard[2]

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to trial by an impartial jury. *See* U.S. Const. amend VI. An impartial jury is one that arrives at its verdict "based on the evidence developed at trial" and without external influences. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "No right touches more the heart of fairness in a trial," *Stockton v. Virginia*, 852 F.2d 740, 743 (4th Cir. 1988), "and this right applies equally to sentencing proceedings that are tried to a jury." *Barnes v. Joyner*, 751 F.3d 229, 240 (4th Cir. 2014).

However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, a court must determine whether the contact had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). "Under

---

[2] The undersigned incorporates by reference the legal standard for summary judgment, the habeas corpus standard of review, and the law applicable to exhaustion and procedural default in habeas matters as stated in the Report. (*See* ECF No. 75 at 12-16).

3

this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637. In this context, *Remmer*'s presumption of prejudice does not apply. *Barnes*, 751 F.3d at 252-53. Rather, to succeed on his claim, the petitioner must "affirmatively prove actual prejudice by demonstrating that the jury's verdict was tainted by the extraneous communication." *Id.* at 253.

Should the court find itself "in 'grave doubt' as to the harmlessness of an error, the habeas petitioner must prevail." *Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002). "'Grave doubt' exists when, in light of the entire record, the matter is so evenly balanced that the court feels itself in 'virtual equipose' regarding the error's harmlessness." *Id.*

## Discussion

At the evidentiary hearing, the juror, Ms. Milanesi, testified that she ran a cleaning service before, during, and after Petitioner's trial. After Ms. Milanesi filled out the juror questionnaire and participated in individual *voir dire*, but before she was selected as a juror on Petitioner's case, she contacted one of her clients, Father Law, an Episcopalian Priest. Ms. Milanesi was not a member of Father Law's church and only attended services there on occasion. Ms. Milanesi stated that, in general, Father Law did not counsel her religiously, but that they did have religious conversations and that religion plays a very important role in her life.

Ms. Milanesi testified that, on this occasion, she wanted Father Law to pray with her for strength to find the truth and that she was concerned that God might not forgive her if she had to vote for the death penalty. Father Law told Ms. Milanesi to follow the law and that God would forgive her. According to Ms. Milanesi, she and Father Law did not discuss the case at all. She

4

did not know the facts of the case at the time of their conversation, only that it was a big case and that she was going to be sequestered.

While the undersigned agrees with Petitioner that Ms. Milanesi's contact with Father Law constitutes an impermissible external influence, the record does not establish that this contact had a substantial and injurious effect or influence in determining the jury's verdict or that Petitioner was actually prejudiced in any way. Ms. Milanesi did not indicate that her discussion with Father Law influenced her decisions or that she shared details of her discussion with other jurors. Further, it does not appear that Father Law voiced any opinion regarding the actual case, how Ms. Milanesi should vote, or how Ms. Milanesi should go about reaching her decisions. The record shows only that Father Law advised Ms. Milanesi to follow the law—the same instruction she would receive from the court throughout the trial—without further explanation, elaboration, or direction. There is no indication that Father Law even pointed Ms. Milanesi to specific Bible passages or referenced the Bible at all.

Petitioner asserts that without Father Law's advice, Ms. Milanesi may not have been willing to serve as a juror, resulting in a different juror taking her place, or that Ms. Milanesi may have been more hesitant to vote for the death penalty. However, these assertions are speculative, are not supported by the record, and do not demonstrate that Ms. Milanesi's conversation with Father Law tainted the jury verdict and actually prejudiced Petitioner. To the extent Father Law may have been an influence on Ms. Milanesi, the record does not show that his limited advice to Ms. Milanesi – which consisted of advising her to follow the law - was prejudicial to Petitioner. *See, e.g., Frye v. Warden, San Quentin State Prison*, No. 2:99-cv-0628 LKK CKD, 2013 WL 6271928, at *74-75 (E.D. Cal. Dec. 4, 2013) (finding external contact not objectively prejudicial and no substantial and injurious effect or influence in determining jury's

5

verdict where juror contacted minister and minister told juror to follow the law).  Nothing in the record suggests that Ms. Milanesi did anything other than dutifully follow the law as the trial court instructed.  Accordingly, as Ms. Milanesi's contact with Father Law did not have a substantial and injurious effect or influence in determining the jury's verdict, Petitioner is not entitled to habeas relief.

## Recommendation

For the foregoing reasons, the undersigned recommends that, should the court reach the merits of Ground Ten, it grant Respondents' motion for summary judgment as to this claim.

s/Kevin F. McDonald
United States Magistrate Judge

March 3, 2015
Greenville, South Carolina

6